AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 1-7-2022)

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| | ) | |
| Information associated with One Target | ) | Case No.   3:23-mj-05169 |
| Account/Identifier, for Investigation of 21 | ) | |
| U.S.C. § 841(a)(1) and Other Offenses | ) | |

```
┌─────────────────────────────┐
│ ──── FILED ──── ──── LODGED  │
│ ──────RECEIVED               │
│                              │
│      May 02, 2023            │
│                              │
│   CLERK U.S. DISTRICT COURT  │
│ WESTERN DISTRICT OF WASHINGTON AT TACOMA │
│ BY_____ DEPUTY     │
└─────────────────────────────┘
```

## APPLICATION FOR A SEARCH WARRANT AND PEN-TRAP ORDER

I, a federal law enforcement officer or an attorney for the government, request a search warrant and pen-trap order, and state under penalty of perjury that I have reason to believe that on the person or property described in Attachment A, located in the Western District of Washington, there is now concealed property and evidence described in Attachment B. This Court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 846 | Distribution of Controlled Substances, Conspiracy |

The application is based on the facts set forth in the attached affidavit, which is incorporated herein by reference with all attachments and exhibits. Pursuant to 18 U.S.C. § 3123(a)(1), Exhibit 1 to the affidavit includes a certification from an attorney from the government that the requested information is relevant to an ongoing criminal investigation.

☒ Delayed notice of 90 days (give exact ending date if more than 30 days: July 31, 2023) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 41, this warrant is presented by:
☒ reliable electronic means; or ☐ telephonically recorded

_____
*Applicant's signature*

Sean Thornton, Special Agent
*Printed name and title*

☐ The foregoing affidavit was sworn before me and signed in my presence, or
☒ The above-named officer provided a sworn statement attesting to the truth or the foregoing affidavit by telephone/

Date: May 2, 2023

_____
*Judge's signature*

David W. Christel, United States Magistrate Judge
*Printed name and title*

City and state: Tacoma, Washington

USAO # 2022R01041

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR
## A SEARCH WARRANT AND PEN-TRAP ORDER

STATE OF WASHINGTON      )

                               )      ss

COUNTY OF PIERCE        )

I, Sean Thornton, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **206-856-3244**, with no listed subscriber or address (Target Telephone 2 or **TT-2**), whose service provider is Verizon, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921. The Target Telephone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

### ECPA

2.      The Court has jurisdiction to issue the proposed warrant under the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

3.      This is the third warrant application (and request for a pen register/trap and trace device, or PRTT) for **TT-2** in this investigation.

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 1
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Pen Register Act

4.      Because the warrant seeks the prospective collection of information that falls within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to comply with the Pen Register Act, 18 U.S.C. §§ 3121-3127.

5.      The Court has jurisdiction to issue the requested pen-trap order because it is a "court of competent jurisdiction" under 18 U.S.C. § 3122(a)(2). Specifically, the Court is a district court of the United States that "has jurisdiction over the offense being investigated." 18 U.S.C. § 3127(2)(A)(i).

6.      This application includes all the information required by the Pen Register Act. *See* 18 U.S.C. §§ 3122(b) & 3123(a)(1). Namely, Exhibit 1 to this application is a certification from Assistant United States Attorney Marci L. Ellsworth that (1) identifies the Federal Bureau of Investigation (FBI) as the law enforcement agency conducting the investigation and (2) certifies the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency. 18 U.S.C. § 3122(b). The Assistant United States Attorney is an "attorney for the government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

7.      A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." 18 U.S.C. § 3127(3). A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication." 18 U.S.C. § 3127(4).

8.      In the traditional telephone context, pen registers captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls. Similar principles apply to other kinds of wire and electronic

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 2

USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  communications such as emails, text messages, connection logs, and data transfers. The

2  prospective location data sought in this application constitutes "dialing, routing,

3  addressing, and signaling information" covered by the Pen Register Act. Accordingly, the

4  requested warrant will record, decode, and/or capture dialing, routing, addressing, and

5  signaling information associated with the Target Telephones without geographic limit.

6      9.      The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and

7  3124(a)-(b), that the Court order through Attachment B of the requested warrant that

8  Verizon and any other person or entity providing wire or electronic communication

9  service in the United States whose assistance may facilitate execution of the warrant

10 furnish, upon service of the warrant, information, facilities, and technical assistance

11 necessary to install the pen/trap, including installation and operation of the pen-trap

12 unobtrusively and with minimum disruption of normal service. Any entity providing such

13 assistance shall be reasonably compensated by the FBI, pursuant to 18 U.S.C. § 3124(c),

14 for reasonable expenses incurred in providing facilities and assistance in furtherance of

15 the warrant.

16     10.     **Through this application, the United States does not request and does**

17 **not seek to obtain the contents of any communications, as defined in 18 U.S.C.**

18 **§ 2510(8).**

19                          **AGENT BACKGROUND**

20     11.     I am an "investigative or law enforcement officer of the United States"

21 within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of

22 the United States who is empowered by law to conduct investigations of, and to make

23 arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

24     12.     I am a Special Agent of the Federal Bureau of Investigation (FBI) and

25 have been so employed since May of 2017. I am currently assigned to FBI Seattle

26 Division's Vancouver Resident Agency (VRA) in Vancouver, Washington, focusing on

27 the investigation of organized crime, gangs, drug trafficking, and other criminal matters.

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 3

USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

13.     Since becoming a Special Agent, I have received specialized training from the FBI, to include completing the 21-week New Agent Training course at the FBI Academy. I have also received training in investigative methods to trace illegal proceeds and prove financial crimes, money laundering, and conduct asset forfeiture. I have participated in multiple drug investigations targeting large scale drug trafficking organizations (DTOs) as the case agent or as an investigating agent. During my tenure as an agent, I have been involved in federal and state wiretap investigations. I have debriefed defendants and witnesses who had personal knowledge regarding drug trafficking organizations. Additionally, I have participated in many aspects of drug investigations, including conducting physical surveillance, confidential source management, providing grand jury testimony, preparing search warrant affidavits, executing search warrants, and making arrests.

14.     Based upon my training and experience, I am familiar with drug traffickers' methods of operation, including their methods of distribution, storage, and transportation of drugs, their methods of collecting proceeds of drug trafficking, and their methods of laundering money. I am also familiar with methods employed by large-scale DTOs to avoid detection by law enforcement, including the use of cellular telephone technology, text messages, counter surveillance, false or fictitious identities, and encoded communications.

15.     The information contained in this affidavit is based upon knowledge I gained from my investigation, my personal observations, my training and experience, and information provided by other law enforcement officers, agents, or analysts. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and PRTTs, and therefore does not set forth all my knowledge about this matter.

16.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 846 (Distribution of Controlled

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 4
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    Substances and Conspiracy) have been committed, are being committed, and will be

2    committed by members of the Norteño street gang, including Edgar Munguia Del Rayo

3    (aka Fatboy), Nicholas Martinell-Sterling (aka Swisher), Jared Dewayne Taylor (aka

4    Privilege), **Eddie Smith**, and others. There is also probable cause to believe that the

5    location information described in Attachment B will constitute evidence of these criminal

6    violations and will lead to the identification of other individuals who are engaged in the

7    commission of these offenses.

8                                        **PROBABLE CAUSE**

9            17.     The United States, including the FBI, is conducting a criminal investigation

10   of the Norteño street gang operating in Southwest Washington and elsewhere. Some of

11   the identified targets include Gregory Brown, Jr. (aka Risky Malo), Edgar Munguia Del

12   Rayo (aka Fatboy), Nicholas Martinell-Sterling (aka Swisher), Jared Dewayne Taylor

13   (aka Privilege), Austin Bell, and **Eddie Smith** (aka Tico). Beginning in fall 2019, the FBI

14   began investigating members and associates of the Norteño street gang sets Red Devil

15   Loko (RDL), in Cowlitz County, Washington, and Lokztero Norteño Gangster (LNG), in

16   the Vancouver, Washington metropolitan area and the State of Washington.[1] The

17   investigation is focused on violations of 18 U.S.C. §§ 922, 924, 1959, and 1962 (firearms

18   offenses, violent crimes in aid of racketeering, and racketeering) and 21 U.S.C. §§ 841

19   and 846 (drug trafficking conspiracy).

20           18.     To further the goals and illicit activities of the criminal enterprise, Norteño

21   street gang members and their associates, including members of the RDL and LNG sets,

22   message and communicate using social media platforms, such as Twitter, Facebook,

23   YouTube, and Instagram, as well as through conventional telephonic contact via mobile

24   devices. Using these platforms and facilities, Norteño gang members in the Western

25   District of Washington (and elsewhere) attempt to avoid detection by law enforcement

26

27   _____

[1] A "set" in this context refers to a chapter or subsidiary organization of a larger gang, here, the Norteño street gang.

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 5
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

and communicate with other Norteño gang members and associates, including those who are incarcerated in state and federal prisons, to further the goals of their criminal enterprise. Agents believe **Eddie Smith** utilizes **TT-2** to commit violations of federal law, specifically to coordinate the local distribution of narcotics on behalf of Norteño leadership.

19.     Using multiple Confidential Human Sources (CHSs), agents have identified LNG members possessing and distributing multiple types of narcotics. Each of the CHSs have been utilized independently from each other to validate or corroborate additional reporting and information. This information has been acquired through the course of this investigation, as well as from other agents and officers engaged in other investigations.

20.     Since 2019 Confidential Human Source 1 (CHS-1) has intermittently cooperated with the government, initially for consideration of state charges for firearm possession, narcotics possession, and distribution, and later for monetary compensation. CHS-1 has a criminal history record in both Washington and Oregon that includes multiple felony convictions for Malicious Mischief – 2nd Degree, Residential Burglary, and Robbery – 2nd Degree. During the periods of cooperation with the government, CHS-1 has provided reliable and timely reporting, engaged in multiple controlled purchases of narcotics and other operational taskings resulting in the issuance of search warrants, seizure of narcotics and firearms, and arrests of individuals involved in criminal activity.

21.     In October 2020, Confidential Human Source 2 (CHS-2) began cooperating with the government in hopes of receiving consideration for pending state charges for narcotics possession and distribution. CHS-2 has a criminal history that includes convictions for Burglary, Theft, and Possession of Controlled Substances. CHS-2 has previously cooperated with local law enforcement resulting in the seizure of narcotics, firearms, the issuance of search warrants, the application of tracking warrants, the

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 6
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   application of electronic surveillance warrants, and the arrests of individuals involved in
2   criminal activity.

3       22.      Beginning in summer 2022, CHS-2 informed investigators that LNG
4   members were engaging in drug trafficking activities between the southwest border of the
5   United States to Clark County, Washington. To facilitate these activities LNG members
6   utilized connections with DTOs to coordinate, arrange, and execute the picking up of
7   narcotics in Southern California to be dropped off in Southwest Washington. CHS-2
8   informed investigators that **Eddie Smith**, among others, would drive from the
9   Vancouver, Washington area to the Los Angeles area of Southern California to purchase
10  quantities of narcotics to be brought back to Washington State.  These trips were
11  coordinated by Nicholas Martinell-Sterling and others.

12      23.      A review of open-source Facebook profiles identified a page bearing
13  display name 'Nick Sterling' residing in Vancouver, Washington. The profile URL link
14  listed on the page is 'https://www.facebook.com/nick.sterling.5439,' indicating that the
15  profile is attributed to Nicholas Martinell-Sterling. The person in the profile photograph
16  is known to investigators as Nicholas Martinell-Sterling, aka 'Swisher,' born in 1995.
17  This was confirmed by comparing the person in the profile photograph with a
18  Washington State Department of Licensing (DOL) photograph of Nicholas Martinell-
19  Sterling. These photographs were also shown to CHS-1 and CHS-2 at separate times.
20  Both CHS-1 and CHS-2 independently confirmed Nicholas Martinell-Sterling as the
21  photographed individual. CHS-1 and CHS-2 additionally confirmed that Nicholas
22  Martinell-Sterling utilizes the moniker 'Swisher.' A review of NCIC records for Nicholas
23  Martinell-Sterling revealed a total of six felony convictions including a 2015 conviction
24  for Unlawful Possession of a Firearm – 2nd Degree under Clark County Superior Court
25  Case No. 15-1-023799, and a 2017 conviction for Unlawful Possession of a Firearm – 1st
26  Degree & Assault – 2nd Degree under Clark County Superior Court Case No. 16-1-

27

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 7
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

026141. Both convictions resulted in Nicholas Martinell-Sterling receiving sentences exceeding one year and one day.

### *Identification of Target Telephone 3*

24.     Through the course of the investigation Nicholas Martinell-Sterling has been identified as the 'shot-caller' or leader of the LNG Norteños in Vancouver, Washington receiving direction from incarcerated Norteños, such as Jeffery D. Lewis, aka JD, born in 1987. This information was independently provided by CHS-1 and CHS-2 at separate times and has been corroborated by the Washington State Department of Corrections (DOC). Agents learned that inmate Jeffery D. Lewis made recorded calls to an outside phone with assigned call number (360) 606-9126 (TT-3). A photograph posted on April 28, 2022, to Nicholas Martinell-Sterling's Facebook profile page as a background shows Jeffery D. Lewis in prison garb with the caption 'Free big bro!!' The posted photo had been altered to obscure the faces of four people. Through coordination with the DOC, investigators have learned Jeffery D. Lewis holds a leadership position in the Washington State Penitentiary's Norteño prison population. Additionally, this photograph was viewed and 'liked' by a profile with the username Frank Martinez, who is also found in the friends list for Nicholas Martinell-Sterling.

25.     On February 9, 2023, I received records from AT&T revealing that TT-3 is subscribed to Nick Sterling with listed address 2311 NE 160th Loop Vancouver, WA 98684. I reviewed Clark County records for the address and found Nick Sterling is not listed as the owner or occupant. However, I was able to find Nicholas Martinell-Sterling as a listed occupant at 7915 NE Burton Road, Unit C26, Vancouver, WA 98662. I am aware, based on my training and experience, that individuals involved in drug trafficking often provide false subscriber information to avoid detection by law enforcement.

26.     I also was able to identify a CashApp account linked to TT-3 with display name 'Nicholas Martinell-sterling' and username '$swisherlokz.' I believe this further serves as an example of Nicholas Martinell-Sterling's association with and use of TT-3.

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 8
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

27.     The Facebook profile page with username 'Frank Martinez' is a public page with URL 'https://www.facebook.com/edgar.munguia.370.' Investigators are aware of Edgar Munguia Del Rayo, born in 1995, as a documented Norteño gang member. A review of phone toll records between April 8 and August 25, 2022, of TT-3 (utilized by Nicholas Martinell-Sterling), revealed 166 contacts with 360-553-2709, a phone attributed to Edgar Munguia Del Rayo via Clark County records as the number used by a listed occupant and utilities (power) subscriber at 7700 NE 72nd Avenue, Apartment D204, Vancouver, beginning in December 2019. The profile page for 'Frank Martinez' is a photograph of an Asian male holding what appears to be a black semi-automatic pistol with a red laser-sight attachment. Investigators compared the profile photograph to a DOL photograph for Edgar Munguia Del Rayo, which did not match the individual in the photograph. However, based on my training and experience, I know that individuals involved in criminal activity often do not use their own photographs on public social media pages, in an attempt to thwart detection by law enforcement.

28.     A review of NCIC records for Edgar Munguia Del Rayo revealed a 2015 conviction for Assault – 2nd Degree under Clark County Superior Court Case No. 14-1-007655, which originated from a 2014 arrest for Assault – 1st Degree & Drive-By Shooting. This arrest is linked to a protection order stating Edgar Munguia Del Rayo must stay away from Cuahutemoc Thomas Hernandez, aka 'Temo', born in 1997, a documented Conejo Valley Loco Sureño

29.     Further, the profile description on the main profile page reads, 'Fuck Tepa fuck SSL Fuck Mvs Fuck Stc' which I believe demonstrates the user's opposition to Sureño street gang sets, specifically Tepa 13, South Side Locos, Mexican Vatos Surenos 13, and Sur Trece Califa 13, which are unilaterally opposed by Norteño gang members in the Vancouver, Washington metropolitan area, and elsewhere.

30.     Investigators showed the DOL photograph for Edgar Munguia Del Rayo to both CHS-1 and CHS-2. Both identified the individual in the photograph as 'Edgar'

1  utilizing the moniker 'Fatboy.' CHS-2 reported that Edgar Munguia Del Rayo has often

2  been observed with Nicholas Martinell-Sterling in the Vancouver area with other Norteño

3  gang members.

4      31.    The investigation revealed that the Facebook accounts referenced above

5  is/are utilized by Nicholas Martinell-Sterling, aka 'Swisher', and Edgar Munguia Del

6  Rayo, aka 'Fatboy.' On November 29, 2022, I received orders compelling Facebook (dba

7  Meta Platforms, Inc.) to disclose records related to the two accounts, pursuant to 18 USC

8  § 2703(d). On December 16, 2022, I received the requested records. During a review of

9  the account associated with Nicholas Martinell-Sterling, I found the phone number (360)

10  606-9126, TT-3, was listed as a verified phone number by the account holder. According

11  to Meta Platforms, Inc. this verification occurs after the account holder responds to a text

12  message sent to the listed phone number. During a review of the account associated with

13  Edgar Munguia Del Rayo, I found the phone number (360) 553-2709 listed as a verified

14  phone number by the account holder.

15                  ***Identification of Target Telephone 1***

16      32.    Investigators have also identified financial accounts associated with Edgar

17  Munguia Del Rayo. One of these accounts was a motor vehicle loan through Toyota

18  Financial Services, which confirmed the address at 7700 NE 72nd Avenue, Apartment

19  D204, in Vancouver. Additionally, it showed phone number (360) 553-2709 as attributed

20  to the account; however beginning in November 2022 records from Toyota Financial

21  Services listed 360-281-3526 (Target Telephone 1 or TT-1) as a new mobile phone

22  number associated with Edgar Munguia Del Rayo.

23      33.    On December 21, 2022, I received notification from DOC that TT-1 was

24  captured on a recorded call with Jeffery Lewis. The call took place on November 8, 2022,

25  and during the call Jeffery Lewis and Edgar Munguia Del Rayo, aka Fatboy, discussed

26  multiple Norteño gang members and associates. Jeffery Lewis and Edgar Munguia Del

27  Rayo discussed multiple individuals that they believed to be 'rats' or 'snitches.' I am

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 10

USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

aware, based on my training and experience, that 'rats' and 'snitches' are examples of coded language to describe individuals who provide information to law enforcement against their co-conspirators, often in consideration for pending charges. The 'rats' or 'snitches' are seen as detrimental and as a liability to the success of illegal activities Norteño gang members complete. During the call, Jeffery Lewis asked in a rhetorical fashion why Norteño gang members in the Vancouver area did not address the issues with the 'rats' and "beat their ass." Additionally, the call captured Jeffery Lewis directing Edgar Munguia Del Rayo to inform 'Swisher' of the status of the 'rats.'

34.     Based on my training and experience I also am aware that violent street gangs abide by a code of conduct. Included in the code of conduct is the direction to not cooperate with law enforcement in any capacity. Further, for those that do cooperate with law enforcement or the government, the consequences often result in acts of violence by Norteños against the violating members. It is my belief that Jeffery Lewis was calling attention to these established codes of conduct requiring potential acts of violence on individuals perceived to be cooperating with the government. Additionally, it is my believe that Jeffery Lewis was sending a message to Nicholas Martinell-Sterling via Edgar Munguia Del Rayo to not only be aware of these potential liabilities, but also to remind them of established codes of conduct governing Norteño members.

35.     On December 23, 2022, I received information from agents with the Drug Enforcement Administration (DEA) in Portland, Oregon pertaining to TT-1, as it was observed on toll records of a phone number the DEA received in a separate investigation. On December 23, 2022, TT-1 was used to create a CashApp account with display name 'Edgar Munguia' and username '$EDGAR360X4.' Based on my training and experience I am aware that the number '14' is significant to Norteño culture, as the letter 'N' is the fourteenth letter of the alphabet. I am also aware that Norteño gang members will utilize 'X' as the Roman numeral for 'ten' adjacent to a number '4' to represent the number '14' as 'X4.' I am also aware that the local area code for the Clark County area is '360.' Based

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 11

USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    on this information, I believe that the CashApp account '$EDGAR360X4' is attributable

2    to Edgar Munguia Del Rayo, a Norteño gang member in the part of Washington State

3    covered by the area code 360, specifically Vancouver.

4    ***Substantial Narcotics Seizure by DEA in Portland, Oregon***

5        36.      On or about January 4, 2023, agents with the DEA Heroin Enforcement

6    Group in Portland, Oregon set up a 'buy-bust' operation in Portland, Oregon using a

7    Confidential Source (CS-1).[2] During a series of electronic communications done at the

8    direction of DEA agents, CS-1 coordinated and arranged the purchase of 20 pounds of

9    methamphetamine for $1,700 per pound.

10        37.      CS-1 has worked with the DEA since 2021 and provides information in

11    exchange for monetary consideration. CS-1 has provided the DEA with truthful and

12    reliable information recently, which has been independently corroborated through DEA

13    investigations. CS-1 has a criminal history that includes a felony conviction for

14    manufacturing/delivery of narcotics and possession of a controlled substance no

15    prescription (possession with intent / intent to deliver) in 2017. Additionally, CS-1's

16    information has assisted investigations with obtaining search warrants, the recording of

17    phone conversations and text messages, and other activities resulting in arrests of

18    investigative subjects.

19        38.      CS-1 contacted the methamphetamine supplier in a series of

20    communications confirming the buy location in an area of Portland, Oregon. During the

21    communications, the supplier stated the drugs would be arriving in a black Kia.

22    Investigators established surveillance units around the agreed upon meet location. Agents

23    met with CS-1 prior to the meeting and searched CS-1 for excess money (i.e., cash in

24    addition to the buy money) and contraband, with negative results, and provided CS-1

---

[2] The DEA's CS-1 is not the same individual referred to in this affidavit as CHS-1.

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 12
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   with electronic monitoring equipment. Shortly thereafter CS-1 parked CS-1's vehicle at

2   the agreed upon meet location and informed the supplier of CS-1's arrival.

3       39.     Shortly after, surveillance agents saw a black Kia bearing Oregon license

4   plate 952NGH driving into the agreed upon meet location, and parking immediately to

5   the west of CS-1's vehicle. CS-1 walked over to the driver's window of the Kia and

6   began speaking with the driver, later identified as Jesus Alonso Ibarra Paez. CS-1 then

7   walked around to the rear passenger-side door and opened it. Shortly, thereafter, CS-1

8   began walking away from the Kia, and gave agents the pre-arranged arrest signal. CS-1

9   advised agents the suspected methamphetamine was in the backseat of the vehicle in both

10  a backpack and a trash bag.

11      40.     Agents contacted the black Kia and detained Jesus Alonso Ibarra Paez. An

12  Oregon City Police Department narcotics detection canine was deployed to conduct an

13  exterior sniff of the vehicle resulting in a positive alert to the presence of the odor of

14  narcotics. An interior sniff of the vehicle was conducted resulting in a positive alert.

15      41.     Agents with the DEA conducted a search of the vehicle and located a black

16  backpack which contained 18 clear, plastic bags of a clear crystal substance and two

17  clear, plastic bags of a clear crystal substance in a nearby black trash bag. The 20 bags

18  weighed approximately 9,895 gross grams of suspected methamphetamine, which has

19  been submitted to the DEA Western Laboratory in Pleasanton, California. Jesus Alonso

20  Ibarra Paez was arrested and booked on the narcotics violations in the District of Oregon.

21      42.     Agents with the DEA informed me that during the timeframe leading up to

22  and immediately following the 'buy-bust' operation the supplier was in frequent contact

23  with TT-1. Based on my training and experience, I am aware that individuals in the drug

24  trade often utilize relationships with trusted associates to ensure their successes. It is my

25  belief that the unidentified supplier and Edgar Munguia Del Rayo, the user of TT-1, were

26  engaging in communication related to the proposed narcotics transaction. It is further my

27

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 13

USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 belief that Edgar Munguia Del Rayo continued to be contacted by the supplier to check
2 on the whereabouts of Jesus Alonso Ibarra Paez.

3     43.    On or about January 4, 2023, I observed open-source Facebook posts on
4 accounts associated with Nicholas Martinell-Sterling, Jared Dewayne Taylor, and others.
5 These photographs showed multiple Norteño gang members gathering on or around New
6 Year's Eve drinking alcohol in a vacant lot believed to be in the Fruit Valley
7 neighborhood of Vancouver, Washington. This is a neighborhood where Norteño graffiti
8 is often observed.

9     44.    Multiple Norteño gang members are in the photograph, including Nicholas
10 Martinell-Sterling, Edgar Munguia Del Rayo, Jared Dewayne Taylor, Austin Bell,
11 Gregory Brown, Jr., and others. Edgar Munguia Del Rayo was wearing a red baseball
12 cap, black and tan jacket, black pants, and white sneakers (making him the third person
13 from the left in the group photograph). Nicholas Martinell-Sterling was wearing a red
14 baseball cap, black face mask, black top, black pants, and black sneakers (making him the
15 first person from the left in the row of people kneeling). Austin Bell was wearing a black
16 winter hat, a San Francisco 49ers football team varsity letterman style jacket with red
17 body and gold sleeves, black pants, and red sneakers (making him the second person
18 from the left in the row of people kneeling, next to Nicholas Martinell-Sterling). Gregory
19 Brown, Jr. was wearing a red and black checkered jacket, light blue jeans, and white
20 sneakers (making him the first person from the right in the row of people kneeling). Jared
21 Dewayne Taylor was wearing a red baseball cap, red hooded sweatshirt under a black and
22 grey jacket (making him the third person from the right in the back row of the
23 photograph). A second photograph showed a newer model black Chevrolet Impala
24 bearing a Lapin Motor Company dealer placard.

25     45.    In the morning hours of January 9, 2023, I conducted surveillance at 7700
26 NE 72nd Avenue in Vancouver. Apartment D204 faces south in the complex with carport
27 parking directly in front of the building. I observed a newer model black Chevrolet

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 14

USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Impala facing south with the vehicle's trunk facing the D Building of the apartment complex. The vehicle was running and appeared to be warming up due to the cold weather. The vehicle had a Lapin Motor Company dealer placard affixed to the front of the vehicle and appeared to be occupied by a Hispanic adult male. Based on my knowledge and experience, I believe the operator and lone occupant of the vehicle was Edgar Munguia Del Rayo.

46.     On January 9, 2023, Sprint records indicated that TT-1 is subscribed to Dana Jackson, at 3408 NE 98th Circle, Vancouver, Washington. I reviewed Clark County records for the address and was unable to find anyone by the name Dana Jackson associated with the address. I am aware, based on my training and experience, that individuals involved in drug trafficking often provide false subscriber information to avoid detection by law enforcement.

47.     On January 11, 2023, I again conducted surveillance at 7700 NE 72nd Avenue in Vancouver. Again, I observed the same Chevrolet Impala parked facing south in front of the D Building. The vehicle was unoccupied.

48.     On January 25, 2023, I requested authorization for a search warrant and pen trap order for TT-1. Magistrate Judge Fricke issued the warrant, and I served it on Sprint on January 26, 2023.

***Identification of Target Telephone 2***

49.     Beginning in Summer 2022, CHS-2 informed investigators that **Eddie Smith**, born in 1994, distributed quantities of narcotics, specifically cocaine and counterfeit oxycodone pills suspected to contain fentanyl, and illegally possessed firearms.  Further, CHS-2 said **Eddie Smith** frequently stored the narcotics in a safe concealed within one of his vehicles, a blue colored Cadillac Escalade or a gold Cadillac DeVille sedan. I believe, based on my training and experience, that **Eddie Smith** distributes narcotics in this fashion to distance his illicit activities from his residence and to thwart law enforcement. **Eddie Smith** resides at 2817 Neals Lane, Apartment 29, in

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 15

USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 Vancouver, Washington. A review of Clark County public utility records identified

2 **Eddie Smith** as the listed occupant at 2817 Neals Lane, Apartment 29, in Vancouver,

3 Washington with 206-856-3422 (**Target Telephone 2** or **TT-2**), listed as the primary

4 telephone number as of February 1, 2022. Investigators showed CHS-2 a DOL

5 photograph of **Eddie Smith** and CHS-2 affirmed that the individual in the photograph

6 was in fact **Eddie Smith**.

7      50.    CHS-2 reported that **Eddie Smith** is supplied cocaine and pills by "P," a

8 Norteño gang member from Yakima who posts rap videos to YouTube and travels to and

9 from Vancouver and Longview.  Investigators showed CHS-2 a YouTube channel under

10 the name 'TrackMoney P' for the Norteño rapper, a Facebook account with display name

11 Izzac Ramirez, and an Instagram account with display name 'TrackMoneyxP.' CHS-2

12 affirmed the person depicted in the screenshots, still images, and photographs from these

13 accounts was the person supplying **Eddie Smith** with narcotics. Investigators shared

14 these images with investigators from Yakima Police Department who identified the

15 individual in the images as Sergio Manuel O. Lopez, Jr, born in 1996. A booking photo

16 for Sergio Manuel O. Lopez, Jr. was also used for comparison to the social media

17 accounts, and it appeared to be the same individual. A review of law enforcement

18 databases revealed that Sergio Manuel O. Lopez, Jr. was the subject of a DEA Task Force

19 search in March 2018which found cocaine, Xanax, $7,861 in United States currency, and

20 weapons. Sergio Manuel O. Lopez, Jr. was arrested and charged in state court for

21 Possession of Controlled Substances with Intent to Deliver.

22      51.    A review of NCIC records for **Eddie Smith** revealed a total of two felony

23 convictions, including a 2017 conviction for Bail Jumping and Assault – 2nd Degree

24 under Clark County Superior Court Case No. 14-1-011971, which covered an April 2014

25 arrest. That 2017 conviction also included sentencing for charges of Possession of a

26 Controlled Substance with Intent to Deliver – Cocaine, Unlawful Possession of a Firearm

27 – 2nd Degree, and Criminal Impersonation – 1st Degree under Clark County Superior

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 16
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  Court Case No. 16-1-023029. Both convictions resulted in **Eddie Smith** receiving a

2  sentence exceeding one year and one day.

3      52.      On or about January 11, 2023, I reviewed toll records from TT-1 that

4  showed inbound and outbound contact with **TT-2**. This number, **TT-2**, was also present

5  on tolls associated with Nicholas Martinell-Sterling (TT-3), Jared Dewayne Taylor, and

6  others. Also on January 11, 2023, I discovered a CashApp account attributed to **TT-2**

7  with the display name '**Eddie Smith**' and username '$eddiewantsyourmoney.'

8  Additionally, financial records received from iQCredit Union for an account opened and

9  attributed to **Eddie Smith**, born in 1994, showed both fields for the Home Phone Number

10  and Alternate Phone Number on the Account Application page list **TT-2**. Based on my

11  training and experience, I believe this demonstrates **Eddie Smith**'s use of **TT-2**.

12      53.      CHS-2 has continued to provide updated reporting regarding **Eddie Smith**.

13  Since December 2022, **Eddie Smith** continues to distribute cocaine and "blues," the

14  counterfeit oxycodone pills suspected to contain fentanyl. In addition, CHS-2 has

15  reported that **Eddie Smith** carries a 45 caliber Glock semi-automatic firearm wherever he

16  goes. CHS-2 has seen the firearm in **Eddie Smith**'s bedroom and described it as black in

17  color with a red-dot laser sight attached to the firearm under the barrel. CHS-2 further

18  described the laser sight as being re-chargeable via USB-C, like a cellular phone, which

19  is how CHS-2 saw the firearm. I am aware, based on my training and experience, that

20  individuals involved in narcotics distribution will carry firearms as a form of protection

21  from being "ripped" by potential clients or rivals. Thus, I believe that **Eddie Smith**

22  carries the described firearm as a form of intimidation for those that may attempt to rob

23  him of narcotics or the illicit proceeds derived from the distribution of said narcotics, as

24  well as protection from rival street gangs, such as Sureños.

25      54.      CHS-2 told investigators that on an unknown date in January 2023, **Eddie**

26  **Smith**'s Cadillac DeVille was broken into while he was working at HBC Furniture

27  Distributors in Portland, Oregon, and the narcotics that **Eddie Smith** had concealed in the

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 17
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  vehicle had been stolen. **Eddie Smith** attributed the theft to a nearby homeless camp.

2  CHS-2 did not know how **Eddie Smith** made this deduction, but in response to the theft

3  **Eddie Smith** approached the homeless camp with the firearm described above and shot

4  multiple rounds at the structures and vehicles at the camp. CHS-2 did not know if **Eddie**

5  **Smith** hit any individual or structure at the camp. I queried investigators in Portland,

6  Oregon for any law enforcement reports around HBC Furniture Distributors over the

7  previous few weeks that specifically involved a firearm or the discharging of a firearm,

8  with negative results. I am aware, based on my training and experience, that individuals

9  involved in drug trafficking or firearms offenses rarely contact law enforcement. It is my

10  belief that **Eddie Smith** would not contact law enforcement to report that his vehicle had

11  been broken into, and further report that his narcotics were stolen from the vehicle. I

12  further believe that **Eddie Smith** would be even less inclined to contact law enforcement

13  and report that he possessed and discharged a firearm, especially as a prohibited

14  possessor of firearms. Additionally, I believe that these series of events show that **Eddie**

15  **Smith** not only carries a firearm as a form of protection for himself, the narcotics, and

16  illicit proceeds, but that he is willing to use the firearm at any cost to protect his interests

17  and illicit activities.

18      55.    On January 24, 2023, Verizon records indicated that **TT-2** does not have a

19  listed subscriber name or address. As previously mentioned, I reviewed Clark County

20  records for **Eddie Smith**'s address and identified both him and **TT-2** as linked to the

21  address. I am aware, based on my training and experience, that individuals involved in

22  drug trafficking often avoid providing subscriber information to avoid detection by law

23  enforcement. Verizon records for **TT-2** did not identify an International Mobile

24  Subscriber Identity (IMSI) or an Electronic Serial Number (ESN). A review of the toll

25  records received from Verizon for **TT-2** covering a 30-day period beginning in December

26  2022 showed 34 contacts with a phone number attributed to Sergio Manuel O. Lopez, Jr.,

27  19 contacts with TT-1, and 105 contacts with TT-3. It is my belief, based on my training

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 18
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

and experience, that these contacts were likely related to narcotics distribution or in furtherance of other Norteño street gang activities.

56.     On February 9, 2023, I requested authorization for a search warrant and PRTT for **TT-2**. Magistrate Judge Christel issued the warrant, and I served it on Verizon on February 9, 2023

### *Continued Use of Target Telephone 1*

57.     Shortly after serving the previously mentioned warrant on the provider for TT-1, I began receiving both geolocation data and pen register/trap and trace data (PRTT data). The geolocation data had a large uncertainty radius (often larger than one mile), but showed the device was primarily around The Woodlands Apartments, at 7700 NE 72nd Avenue in Vancouver, WA. Between January 26 and February 7, 2023, investigators utilized the geolocation data in furtherance of physical surveillance, primarily focusing on the apartment complex. During these surveillance events the dark-colored Chevrolet Impala bearing dealer placards was consistently parked in front of the D Building where Edgar Munguia Del Rayo's apartment is located.

58.     On February 7, 2023, investigators observed Edgar Munguia Del Rayo walking with the assistance of crutches along the driver's side of the Impala. Munguia then entered the driver's door of the vehicle after placing the crutches in the rear passenger compartment. He sat in the parked vehicle for a few minutes, eventually exiting the parking space traveling east through the apartment complex. Both the front and rear of the vehicle still had the dealer placard from Lapin Motor Company in Portland, Oregon. Edgar Munguia Del Rayo drove north from the apartment complex onto NE 72nd Avenue towards NE 78th Street, eventually turning westbound towards NE Andresen Rd. I continued to monitor the geolocation data for TT-1, observing that the movement of both Edgar Munguia Del Rayo and the Chevrolet Impala corresponded with the movements of TT-1 traveling through Vancouver, WA.

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 19
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

59.     On February 13, 2023, I requested call records from Washington State Department of Corrections for any calls made to TT-1 from inmates between the dates of December 18, 2022, and February 13, 2023. I received the records on February 22, 2023, identifying 24 calls made to TT-1 in that timeframe. All the calls were made by inmate Jeffery D. Lewis (aka "JD") and ranged in duration from a few minutes up to the maximum call length of 20 minutes.

60.     One example was a call from Jeffery D. Lewis to Edgar Munguia Del Rayo on TT-1 on January 30, 2023. In the conversation, Edgar Munguia Del Rayo described being in the Seattle metropolitan area for a doctor's appointment. The geolocation data for TT-1 corroborated that Edgar Munguia Del Rayo and TT-1 were in the Seattle, Washington, city limits at the time of the call. Based on my training and experience, I believe that this shows Edgar Munguia Del Rayo's continued control and usage of TT-1. Further, it explains the observation of Del Rayo on crutches during the February 7, 2023, surveillance event.

61.     Another example took place on February 3, 2023. The parties discussed the January 30, 2023, doctor's appointment, and Edgar Munguia Del Rayo's continued use of crutches. During the call to TT-1 Lewis asked Edgar Munguia Del Rayo about a recent event where "something popped off." I am aware, based on my training and experience, that "something popped off" is a common phrase used to describe a significant event in the local gang or drug culture, such as a confrontation with an opposing force (i.e., a rival gang or law enforcement), an arrest or seizure of contraband by law enforcement, or the raising of an internal political issue within the Norteño gang structure. Lewis informed Edgar Munguia Del Rayo that he had reached out to both LNG shot-caller Nicholas Martinell-Sterling, whom Lewis referred to as "Swish," and LNG member Timothy Kinnunen (aka "Temper") for details. Neither Lewis nor Edgar Munguia Del Rayo provided any further details about the event during the call. Based on my training and experience, it is my belief that both parties have been trained enough to not explicitly

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 20
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  detail potentially criminal activities or allegations concerning Norteño gang members

2  over the recorded line to avoid or deter detection by law enforcement.

3      62.    Later in the February 3, 2023, conversation Lewis asked for "2 bills" from

4  Edgar Munguia Del Rayo to get a "fool taken care of." I believe, based on my training

5  and experience, that "2 bills" is coded language for $200 of United States currency to be

6  put on Lewis's commissary by Edgar Munguia Del Rayo. I am also aware, based on my

7  training and experience, that "fool" is coded language for a non-Norteño or rival gang

8  member with whom a conflict exists, and to "take care of" is coded language for having a

9  conflict resolved, oftentimes by a third party, through intimidation, violent act, or other

10  illicit method. Neither Lewis nor Edgar Munguia Del Rayo expanded upon or provided

11  specifics for the necessity of the $200, but I believe, based on the above information, that

12  Lewis asked Edgar Munguia Del Rayo to put $200 on his commissary to be used as

13  payment for the resolution of an unspecified conflict. As previously mentioned, I am

14  aware that incarcerated individuals will intentionally avoid using specific or direct

15  language on recorded jail or prison telephone systems to thwart law enforcement when

16  discussing illicit activities. Edgar Munguia Del Rayo told Lewis that an individual

17  referred to as "the Homie" owed Edgar Munguia Del Rayo a total of $800, and that $200

18  of that could be forwarded to Lewis's commissary account. Edgar Munguia Del Rayo

19  intimated that "the Homie" was not a Norteño gang member stating, "he's not a Homie,"

20  indicating that the referenced individual is a friend or associate of sorts. I am aware,

21  based on my training, that Norteño gang members will use coded language to refer to

22  other Norteño gang members as "homies," and will occasionally extend the designation

23  to trusted or close associates who are not indoctrinated into the Norteño street gang. It is

24  my belief that this unidentified individual is a close enough associate to the Norteño

25  street gang to receive such a designation.

26      63.    On February 4, 2023, Lewis and Edgar Munguia Del Rayo spoke again via

27  TT-1. Again, the topic of the $200 was raised. Lewis sounded desperate to have the funds

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 21
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   transferred to him. Based on my training and experience, I am aware that incarcerated

2   individuals are often reliant on outside sources of assistance. These outside sources are

3   often associated gang members, significant others, family, or friends. In this situation, if

4   Lewis contracted or outsourced assistance from a third party who required payment for

5   services, and Lewis was unable to provide payment for these services, then Lewis's

6   credibility with the third party would be in jeopardy, and potentially his safety would be

7   at risk within the facility. Lewis asked Edgar Munguia Del Rayo to pick up "the Homie"

8   and take him to the bank to pull out the funds, and further asked Edgar Munguia Del

9   Rayo to task Nicholas Martinell-Sterling with inquiring about the funds.

10   64.    I am aware, based on my training and experience, that the Norteño street

11   gang operates in a hierarchical structure both in the prison facilities and in street

12   operations. Further, the street level operations receive direction from incarcerated

13   individuals, and in this instance inmates in designated positions of power within the

14   Washington State Penitentiary in Walla Walla, Washington provide direction to street

15   level Norteño gang members. Based on this awareness, I believe in this instance, Jeffery

16   D. Lewis, an incarcerated individual holding a position of power within the Washington

17   State Penitentiary, directed Edgar Munguia Del Rayo to request assistance from Nicholas

18   Martinell-Sterling, the designated shot-caller for LNG in Clark County, Washington, to

19   resolve the issue of getting commissary funds appropriately routed.

20   65.    The February 4, 2023, call continued with Lewis and Edgar Munguia Del

21   Rayo discussing Norteño gang politics. Both parties discussed an ongoing issue involving

22   a Norteño gang member referred only by the moniker 'Rowdy.' Based on the context of

23   the call, Rowdy is a 'VC' on "freeze." I am aware, based on my training and experience,

24   that 'VC' is an abbreviation for Oregon-based Norteño set 'Varrio Catorce,' or

25   Neighborhood 14. I am aware, based on my training and experience, that the number 14

26   is significant to the Norteño street gang, as previously explained. I am also aware, based

27   on my training and experience, that "freeze" is coded language within the Norteño gang

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 22
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  to describe an individual under review for a transgression against the Norteño code of

2  conduct or established guidelines. According to Edgar Munguia Del Rayo, VC leadership

3  did not want to hear about the issues concerning Rowdy. Edgar Munguia Del Rayo went

4  on to describe VC's program being out of the norm from other Norteño gang sets. I am

5  aware, based on my training and experience, that each set is responsible for ensuring it

6  conforms to an established set of guidelines, or program. Any deviation from the standard

7  program is odd and easily noticed. Lewis inquired if Edgar Munguia Del Rayo told the

8  'Big Homie' to get help resolving this issue.

9       66.    I believe the 'Big Homie' is Jose Arredondo, who also goes by the moniker

10  'Big Cuyi.' In December 2022, Washington State Department of Corrections

11  investigators provided a review of a phone call made by Pablo Castellon (aka 'Sapo'),

12  housed at the Washington State Penitentiary, to Jose Arredondo, who currently lives in

13  Yakima, Washington. Investigators have identified Arredondo as a Yakima- based

14  Norteño gang member who receives direction from La Nuestra Familia gang members in

15  Bureau of Prisons facilities. I am aware, based on my training and experience, that

16  Norteño gang members involved in street & prison hierarchies ultimately receive

17  direction from La Nuestra Familia. During the call, Castellon directed Arredondo to call

18  360-281-3526 (TT-1) to assist in resolving an ongoing issue. Based on this information, I

19  believe that Edgar Munguia Del Rayo (the user of TT-1) was put in touch with Jose

20  Arredondo for help resolving a Norteño gang issue at the benefit of both the Norteño

21  street gang and La Nuestra Familia. Further, I believe that Arredondo is 'the big Homie'

22  Lewis referenced in the call with Edgar Munguia Del Rayo.

23       67.    On February 5, 2023, another phone call took place between Jeffery D.

24  Lewis and Edgar Munguia Del Rayo, using TT-1. The parties again talked about the

25  $200, with no significant update from either party. The conversation then turned to

26  discussing photographs sent to Jeffery D. Lewis via prison communication systems that

27  include many of the LNG set members together in a vacant lot. Lewis asked Edgar

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 23

USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  Munguia Del Rayo to describe where in Vancouver the photos were taken, and Munguia

2  Del Rayo provided a vague description of the Fruit Valley neighborhood in Vancouver.

3  Edgar Munguia Del Rayo further described the location as a place where various Norteño

4  gang members from different sets get together to "kick it" and meet up.

5         68.  I am aware, based on my training and experience, that those involved in

6  collaborative illicit activities will gather to conduct meetings. These meetings will often

7  involve the delivery of new information received from other co-conspirators in leadership

8  roles to provide direction for the organization. Additionally, I am aware that these

9  meetings are often held in areas that are easy to conduct counter-surveillance and avoid

10  detection by law enforcement. These locations are often in territories or areas controlled

11  by the organization, in this instance the Norteño street gang. I am also aware that the

12  Fruit Valley neighborhood has a historical significance to Norteño street gang members

13  in the Vancouver, WA area with many Norteño gang members and associates living in

14  the area.

15         69.  On March 9, 2023, I again requested authorization for a search warrant and

16  PRTT order for TT-1. Magistrate Judge Fricke issued the warrant, and I served it on

17  Sprint on March 10, 2023.

18         ***Identification of Target Telephone 4***

19         70.  During the receipt of pen register data from TT-1 and TT-2, I identified

20  (360) 936-1670 (Target Telephone 4 or TT-4) as a common contact with both numbers.

21  Since the first receipt of data for TT-1 and **TT-2**, TT-4 had 170 contacts with TT-1 and

22  an additional 26 contacts with **TT-2**. Additionally, I have identified an active CashApp

23  account linked to TT-4 with the display name of 'Austin Bell' and the username of

24  '$krapKilla187.'

25         71.  I am aware, based on my training and experience, that Norteño gang

26  members use the word "skrap" or "scrap" as a derogatory term for Sureño gang members.

27  I am also aware, based on my training and experience, that '187' is coded language

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 24

USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    referring to Section 187 of the California Penal Code pertaining to the crime of murder.

2    Based on this information, I believe that the '$' is an intentional replacement for the letter

3    'S' indicating that Austin Bell self-identifies, or at least presents himself, as an individual

4    who would kill, or murder, a "skrap", or Sureño.

5        72.    I have also identified an open-source Facebook profile page with display

6    name 'Austin Bell' and URL of https://www.facebook.com/austin.bell.7773631. I have

7    also reviewed a DOL photograph for Austin Bell, born in 2001, to compare it to profile

8    pictures from the referenced Facebook profile. I believe the individual in the DOL

9    photograph and the Facebook profile are one and the same. Based on this, I believe

10   Austin Bell, born in 2001, is the user of TT-4. I reviewed a criminal history database for

11   Austin Bell, born in 2001, and found no identifiable records.

12       73.    On February 9, 2023, I received records from AT&T showing that TT-4 is

13   subscribed to 'Cutberto Martinez' with listed address 5800 NE 45th Avenue, Vancouver,

14   WA 98661. I reviewed Clark County records for the address and was unable to find

15   anyone by the name Cutberto Martinez associated with it. I am aware, based on my

16   training and experience, that individuals involved in drug trafficking often provide false

17   subscriber information to avoid detection by law enforcement. However, the subscriber

18   address for TT-4 is the same address listed on Austin Bell's Washington driver's license.

19                *Drive-By Shooting Resulting in Homicide – March 11, 2023*

20       74.    On March 11, 2023, at approximately 10:35pm, a confrontation occurred

21   between patrons at a Safeway grocery store located at 6701 E Mill Plain Blvd,

22   Vancouver, WA. The involved parties were later identified as Nicholas Martinell-

23   Sterling, Austin Bell, M.R (born in 1980), A.G. (born in 1987), A.C. (born in 1987), and

24   H.G.C. (born in 1995). The confrontation resulted in a drive-by style shooting in the

25   parking lot of the grocery store, wherein H.G.C. was struck by multiple rounds. Other

26   individuals in the car with H.C.G. drove H.C.G. to PeaceHealth Southwest Medical

27   Center, at 400 NE Mother Joseph Place, Vancouver, WA. H.C.G. did not survive. As the

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 25
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   vehicle with H.C.G. in it approached the Emergency Room, an individual in a dark-

2   colored sedan shot at the car, wounding its occupants. Investigators later determined that

3   the shooting event was gang related, with the shooters being Norteños and the victims

4   being Sureños.

5          75.    Responding Vancouver Police Department officers and detectives

6   determined that Austin Bell was driving the dark-colored sedan and Nicholas Martinell-

7   Sterling was a passenger. I am being intentionally vague as to the contributing factors

8   that led to this determination, as they include witness and victim statements, who may

9   likely be subject to retribution for cooperating with law enforcement. Surveillance photos

10  from the Safeway store show Austin Bell wearing all red and Nicholas Martinell-Sterling

11  wearing a grey Portland Trailblazers hat, grey hooded sweatshirt with white script

12  writing, and blue jeans. Responding law enforcement and I reviewed the surveillance

13  photos to identify Austin Bell and Nicholas Martinell-Sterling.

14         76.    I reviewed geolocation and pen register data for both TT-1 and **TT-2** at the

15  time following the shooting. At 10:43pm, a few minutes after the shooting, TT-1 received

16  an incoming call from TT-4. The pen register data indicates this call lasted 17 seconds.

17  CCTV footage from The Woodlands Apartments, 7700 NE 72nd Avenue, Vancouver,

18  shows that Edgar Munguia Del Rayo's black Chevrolet Impala departed the apartment

19  complex at 10:57pm. The geolocation data indicates TT-1 traveled away from The

20  Woodlands apartment complex and headed south, arriving at or near the Lewis Ridge

21  apartment complex at 7915 NE Burton Road, Vancouver, WA.[3] A review of Clark

22  County Geographic Information Service Property Information Service records shows

23  Unit C26 in the complex is occupied by Nicholas Martinell-Sterling and J.S., as of July

24  2022. At 12:23am on March 12, 2023, investigators on physical surveillance saw Edgar

25

26  _____

27  [3] The geolocation data uncertainty radius for TT-1 consistently exceeds one-mile.

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 26
USAO # 2022R01041

1  Munguia Del Rayo's Chevrolet Impala return to The Woodlands apartment complex.

2  This arrival was backed by the geolocation data for TT-1.

3      77.     It is my belief that Nicholas Martinell-Sterling utilized TT-4 to call Edgar

4  Munguia Del Rayo, using TT-1, to request assistance following the shooting. I believe

5  that Edgar Munguia Del Rayo travelled between the two apartment complexes within the

6  26-minute timeframe. Due to the proximity of the two apartment complexes

7  (approximately 3.3 miles) and the low-traffic time of night surrounding the events, it

8  would not be unreasonable to believe that this trip could completed within the described

9  timeframe. Further, I believe, Edgar Munguia Del Rayo either picked up Nicholas

10  Martinell-Sterling at the Lewis Ridge apartment complex, taking him to an unknown

11  location, or picked up the firearm from Nicholas Martinell-Sterling that was used in the

12  drive-by shooting(s). I believe this was a conscious effort by both parties to thwart law

13  enforcement in the event of a search warrant at Nicholas Martinell-Sterling's apartment

14  by hiding the firearm used during the shooting.

15      78.     Beginning at 12:56am on March 12, 2013, the pen register data for TT-1

16  showed incoming and outgoing texts to (509) 901-9552, as well as an outgoing call

17  which lasted 31 seconds. A review of open-source records revealed (509) 901-9552 is

18  associated with a Gomez M. Godoy, located at 305 E P Street, Unit 2, Yakima, WA

19  98901. I also identified a CashApp account linked to this number with the display name

20  'Manuel Godoy' and username '$KeepsComing.' After consulting with investigators in

21  Yakima, WA, it was determined that this phone number is attributed to Yakima-based

22  Norteño gang member Manuel Godoy, aka "Gear." The address listed in the open-source

23  records is a known address associated to Manuel Godoy by Yakima, Washington law

24  enforcement.

25      79.     Based on my training and experience, I believe that Edgar Munguia Del

26  Rayo reached out to Manuel Godoy to notify Manuel Godoy of the shooting, and

27  possibly to request assistance. I also believe that it is possible that Nicholas Martinell-

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 27
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  Sterling has left or will leave the Vancouver, Washington area to avoid arrest and
2  prosecution relating to the murder investigation. It is also my believe that Yakima-based
3  Norteños would be willing to assist Nicholas Martinell-Sterling, as the LNG shot-caller. I
4  am also aware, based on my training and experience, that Norteños are often required to
5  commit acts of violence against Sureños in furtherance of the Norteño cause. It is my
6  belief that Nicholas Martinelli-Sterling committed this act of violence as a show of
7  dedication to the Norteño cause. Notification to other Norteños in Washington State
8  would show this dedication, as well as be an avenue to request resources in the form of
9  manpower or assistance in evading arrest. Additionally, I am aware, based on my training
10 and experience, that gang-related violent events are often subject to escalation. This
11 escalation is either through retribution or retaliation, or through further violent acts
12 committed by the initiating group. I believe it is likely that violence will continue
13 between Norteños and Sureños in Southwest Washington.

14     80.     Throughout the day on March 12, 2023, the pen register data for TT-1 and
15 **TT-2** showed continued contact with TT-3 and TT-4.

16     81.     On March 14, 2023, I requested authorization for a search warrant and
17 PRTT order for TT-3 and TT-4. Magistrate Judge Fricke issued the warrant, and I served
18 it on AT&T on March 14, 2023

19                 ***Arrest of Nicholas Martinell-Sterling & Austin Bell***

20     82.     On March 15, 2023, investigators from the Vancouver Police Department
21 Major Crimes Unit, Neighborhood Response Team, the Southwest Washington Special
22 Weapons and Tactics (SWAT) team, and the FBI located and arrested Nicholas
23 Martinell-Sterling at his address in Vancouver, WA. Nicholas Martinell-Sterling was
24 booked into the Clark County Jail for the following charges under cause 23-1-00666:
25 First Degree Murder, three counts of First Degree Assault, Drive-by Shooting, and First
26 Degree Unlawful Possession of a Firearm. Nicholas Martinell-Sterling remains in
27 custody at the time of this affidavit.

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 28
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

83.     On March 20, 2023, investigators from the Vancouver Police Department Major Crimes Unit, Neighborhood Response Team, the Portland Police Bureau Special Emergency Reaction Team (SERT), and the FBI located and arrested Austin Bell in Portland, Oregon. Austin Bell was initially booked into a jail in Multnomah County, Oregon, prior to being transported to Clark County, Washington. Currently, Austin Bell is booked into the Clark County Jail for the following charges under cause 23-1-00718-06: First Degree Murder, three counts of First Degree Assault, Drive-by Shooting, and First Degree Unlawful Possession of a Firearm. Austin Bell remains in custody at the time of this affidavit.

### *Continued Use of Target Telephone 2*

84.     Shortly after I received the previously mentioned warrant for **TT-2** in early February and served it on Verizon, I began receiving both geolocation data and pen register/trap and trace data (PRTT data). The geolocation data has shown a relatively small uncertainty radius (often no larger than one-half mile), and that the device was primarily located around Hidden Villa Apartments, at 2817 Neals Lane in Vancouver, WA. Beginning on February 10, 2023, agents utilized the geolocation data from **TT-2** while conducting multiple surveillance missions focusing on **Eddie Smith.** Surveillance events would frequently be assisted by CC/TV footage at or near the apartment complex. Some of these surveillance events occurred in the morning hours. On a regular and consistent basis, **Eddie Smith** left the apartment building between 7:30am and 7:45am, entering a gold Cadillac DeVille sedan bearing Washington license plate CCS1265, and eventually exiting the apartment complex parking lot on a routine and consistent path to HBC Furniture Distributors in Portland, Oregon. The geolocation data showed **TT-2** remained in the immediate area of HBC Furniture Distributors during the workday except for some minor deviation at or near the lunch hour. DOL records indicate **Eddie Smith** is the registered owner of the Cadillac.

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 29
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

85.     On February 22, 2023, I was reviewing the geolocation data and observed **TT-2** traveling southbound on Interstate-5 from the Vancouver-Portland metropolitan area. The weather on the described date, as well as the weekend forecast, was for a substantial amount of winter weather. This inclement weather subsequently caused significant traffic issues and road closures in the area. Additionally, the inclement weather had an impact into the following week. I checked the CC/TV footage near **Eddie Smith**'s apartment and saw that the snow-covered Cadillac sedan left the area of the apartment complex at approximately 4:34 pm that day. I monitored the geolocation data as **TT-2** continued south eventually arriving in San Francisco, California. I then checked the geolocation data for **TT-2** prior to its departure from Vancouver city limits. I was able to determine that **TT-2** traveled to the Fruit Valley Neighborhood, specifically the Plum Meadows Apartment complex, at 1919 W 34th Street in Vancouver, WA. The following geolocation ping showed **TT-2** was across the Washington-Oregon state line ,where it continued south to California.

86.     I believed, based on my training and experience, as well as the previously stated reporting from CHS-2, that **Eddie Smith** was traveling to San Francisco, California to pick up narcotics. I also believed that **Eddie Smith** may have been traveling with another Norteño associate. The Plum Meadows Apartments has been identified as a hangout location in the Fruit Valley Neighborhood for the Vancouver-based Norteño sets. I also believe that **Eddie Smith** was taking an intentional and calculated risk traveling in the weather. During times of inclement weather, law enforcement officers are often diverted from conducting traffic stops to allow a response to any type of weather-induced traffic accident. Based on this knowledge, I believe **Eddie Smith** was attempting to capitalize on this limited enforcement capability to be able to safely move narcotics from San Francisco to the Vancouver, WA area.

87.     **Eddie Smith** remained in San Francisco, California until Sunday February 26, 2023 when the geolocation data pings for **TT-2** show it began traveling north. The

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 30
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  inclement weather in the area had created difficult, and possibly unsafe, driving

2  conditions for investigators to attempt conducting surveillance or any potential

3  enforcement action. The geolocation data showed **TT-2** arriving back in Vancouver, WA

4  in the early morning hours of February 27, 2023.

5      88.     Following the homicide referenced above, the PRTT on **TT-2** has shown an

6  increase in activity. The greatest increase has been in **TT-2**'s contact with TT-3 and TT-

7  4.  During the period between March 11 and 16, 2023, there were five contacts between

8  **TT-2** and TT-3, whereas between early February and March 10, 2023, there had been no

9  contact between **TT-2** and TT-3. Additionally, in the five days between March 11 and 16,

10  2023, there were 12 contacts between **TT-2** and TT-4, whereas in the month or so prior to

11  March 11, there had only been 17 contacts between **TT-2** and TT-4. It is my belief that

12  **Eddie Smith**, the user of **TT-2**, utilized **TT-2** to contact the users of TT-3 and TT-4 to

13  ensure the protection of the Norteño street gang and its members in the aftermath of the

14  drive-by shooting. It is my belief that **Eddie Smith** was also relaying information

15  received from other Norteño gang members, such as Edgar Munguia Del Rayo, Sergio

16  Lopez, and others.

17      89.     However, an event such as a homicide still did not appear to deter **Eddie**

18  **Smith** from continuing his drug trafficking activities. The pen register data continued to

19  show a consistent pattern of contacts to and from phone numbers and **TT-2** that were

20  intermixed with CashApp notifications. As previously described, this is consistent with

21  techniques used in drug trafficking and distribution designed to thwart detection by law

22  enforcement. The frequency of these types of exchanges have not reduced following the

23  described homicide incident and appear to have continued at the same rate. The telephone

24  numbers preceding and following the CashApp transactions continue to occur with the

25  same individuals in a continuing frequency indicating a customer requesting a service or

26  product, in this instance narcotics, in exchange for United States currency with CashApp

27  being used as a conveyance for the transaction. The geolocation data for **TT-2** around the

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 31

USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 timeframe of the pen register data shows the device continues to move in and around

2 Vancouver, which is also consistent with the distribution of narcotics.

3     90.    On March 20, 2023, I again requested authorization for a search warrant

4 and PRTT order for **TT-2**. Magistrate Judge Fricke issued the warrant, and I served it on

5 Verizon on March 22, 2023.

6                 ***Arrest of Gregory Brown, Jr., by Longview Police Department***

7     91.    On April 8, 2023, at approximately 9:00am, a citizen made a 9-1-1 call to

8 report a silver-colored Ford Taurus stopped in the middle of Maple Street in Longview,

9 Washington. The caller expressed concern, as both male occupants appeared to be passed

10 out while seated in the front two seats of the running vehicle. Officers responded to check

11 the welfare of the described vehicle occupants, who were since reported to have moved

12 from the middle of Maple Street. The initial concerns for responding officers were that

13 the occupants were under the influence of alcohol or a narcotic and presented a risk to

14 public safety.

15     92.    When officers arrived on scene they contacted the described vehicle,

16 bearing Idaho license plate of 0034B, later identified to have Vehicle Identification

17 Number (VIN) IFAHP2E83DG130107. The vehicle was still running and appeared to be

18 in drive upon initial contact. Both occupants appeared to be asleep. Based upon their

19 training and experience, the responding officers were aware that fentanyl is an extremely

20 potent and deadly controlled substance that has become inherently popular nationwide

21 amongst the street drug community, has many side effects like opiates, and that

22 individuals under the influence of fentanyl often 'nod off' or doze off into a sleep-like

23 state while experiencing the effects of the drug. Based on these observations, and their

24 own knowledge and experiences, the responding officers believed the occupants were

25 under the influence of fentanyl, or possibly overdosing.

26     93.    Officer Matt Hartley contacted the driver and immediately recognized him

27 on sight as Gregory Brown, Jr., born in 1997. Officer Hartley was previously assigned to

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 32

USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   the Longview Police Department's Street Crime Unit (SCU). The SCU knows Gregory

2   Brown, Jr. as an upper-level narcotics dealer in the greater Cowlitz County area involved

3   in transporting and distributing large sums of controlled substances, specifically

4   methamphetamine and fentanyl. Officer Hartley was also aware that Gregory Brown, Jr.

5   is a convicted felon, who cannot legally possess a firearm.

6       94.     During Officer Hartley's initial contact with Gregory Brown, Jr., Officer

7   Hartley observed a large sum of United States currency underneath Gregory Brown, Jr.'s

8   feet as he sat behind the wheel of the vehicle in the driver's seat. Based on his training

9   and experience, Officer Hartley knows that drug dealers almost always carry large sums

10  and different quantities of currency on their person, to readily purchase more controlled

11  substances, as well as to make change for customers. A routine check for wants or

12  warrants on Gregory Brown, Jr. revealed that Gregory Brown, Jr.'s driving status was

13  suspended or revoked. Further, Gregory Brown, Jr.'s speech was slow at times and

14  slightly slurred. These physical observations are consistent with a person under the

15  influence of fentanyl. Officer Hartley read Gregory Brown, Jr. his *Miranda* warnings.

16  Gregory Brown, Jr. advised Officer Hartley he understood his constitutional rights and

17  agreed to speak.

18      95.     Post-*Miranda*, Officer Hartley asked Gregory Brown, Jr. if he was under

19  the influence of fentanyl or if there was any fentanyl inside the vehicle. Gregory Brown,

20  Jr. denied both. Based on his training, experience, and the suspicions described above,

21  Officer Hartley asked Gregory Brown, Jr. to step out of the vehicle and detained him in

22  handcuffs. As Gregory Brown, Jr. opened the front door of the vehicle, Officer Hartley

23  observed in plain sight, in the driver's side door pocket, a pistol that had been sheathed

24  inside of a semi-transparent black and red sock. Officer Hartley specifically noticed the

25  rear sights of the pistol that caused the fabric of the sock to stretch and allowed more

26  visibility through the fabric.

27

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

96.     Officer Hartley contacted Cowlitz County Sheriff's Office Deputy Ness Aguilar to request he and his K9 partner 'Kilo' respond to assist in the investigation. Deputy Aguilar arrived during the above-described contact and applied Kilo to the exterior of the vehicle for a K9 sniff. Officer Hartley was later advised that Kilo did alert to the odor of narcotics inside the vehicle.

97.     Officer Hartley asked Gregory Brown, Jr. why he was driving the vehicle with a suspended or revoked license; Gregory Brown, Jr. responded he was just trying to get some food for the day. Officers took Gregory Brown, Jr. into custody for Driving with a Suspended or Revoked License and Unlawful Possession of a Firearm – 1st Degree. A search of Gregory Brown, Jr.'s person incident to arrest revealed a plastic baggy contained suspected controlled substances (17 green pills) and a large sum of United States currency. Officer Hartley conducted a query of the website http://www.drugs.com which revealed that these pills are a form of benzodiazepines, a Schedule IV controlled substance requiring a prescription to possess legally. The baggy that these pills were contained in were consistent with packaging commonly used to distribute street drugs. Based on my training and experience, I am aware that benzodiazepines are prescribed by a physician to treat certain maladies and individuals involved in narcotics distribution will knowingly acquire, possess, and distribute these narcotics to get high from the prescription medication's chemical compounds.

98.     Officer Hartley requested a tow truck respond to the scene and collect the 2013 Ford Taurus for a search warrant application. The vehicle was transported from the scene of contact to the Longview Police Department's secured parking garage, where Sgt. B.J. Mortensen further secured the vehicle with evidence tape. Officer Hartley authored a search warrant for the above-described vehicle, which was later reviewed and electronically approved by the Honorable Judge Blondin in Cowlitz County, Washington. The warrant authorized officers' entry into the vehicle to search for evidence related to the crimes of Possession of Controlled Substances with Intent to Deliver, as well as First

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 34
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Degree Unlawful Possession of a Firearm. During the execution of the search warrant the following items were recovered from the vehicle:

- $945 in US Currency found both inside of the vehicle, as well as on Brown's person,
- A white Apple iPhone in a clear case, located inside the center console,
- A white Apple iPhone in a black case, located inside the center console,
- Smith & Wesson M&P 9mm pistol, Serial No. NEH2039
- A S&W ammunition magazine, recovered from the pistol above
- Two 9mm rounds of ammunition, recovered from the pistol and magazine
- 17 green pills in plastic baggy weighing 5.69 grams recovered from Gregory Brown, Jr.'s person by Officer Hardy during a search incident to arrest, and
- Plastic baggy containing 100 blue in color, circular pills labeled "M/30" found in the back pocket compartment of the front passenger's side seat.

99.     Based on my training and experience, drug dealers commonly have multiple phones in their possession to separate personal and work-related communications. I am also aware, based on my training and experience, that those involved in narcotics distribution often carry firearms for protection. These firearms are possessed to prevent from being robbed or a victim of a 'drug rip' by rival drug dealers or opposing gang members. I am also aware that the firearms possessed by narcotics traffickers are utilized as a form of intimidation towards their customers to ensure payment for the supplied narcotics. Based on this information, I believe Gregory Brown, Jr. was in possession of the Smith & Wesson pistol as a form of protection or intimidation while conducting drug deals. The fact that it was in the driver's side door further causes me to believe that Gregory Brown, Jr. was the person able to access the firearm to use during a drug deal or violent encounter.

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 35
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

100.    The serial number on the recovered firearm was checked via local law enforcement records, and had been reported as stolen out of Kelso, Washington, by the legal owner. There was a 9mm round chambered in the firearm, and one additional live 9mm round in the magazine well. In the condition it was found, the firearm would be capable of firing two rounds.

101.    Based on my training and experience, the approximately 100 blue in color pills labeled "M/30" are consistent with counterfeit oxycodone hydrochloride pills, which are laced with fillers and fentanyl. I am also aware that these pills are often referred to as "blues" by those involved in the drug culture. Fentanyl is a Schedule II controlled substance, which is illegal to possess absent a prescription. Based on my training and experience, I know that one of these pills can be sold at prices ranging between $5 and $15. I have acquired this information from conducting debriefs of individuals involved in distributing these pills, as well as through information shared by other law enforcement officers. Based on this information, I can deduct that these pills have a street value of between $500 and $1,500. Additionally, the location of the pills in the back pocket compartment of the vehicle's front passenger side seat means they would be most easily accessed by Gregory Brown, Jr. seated in the driver's seat. I am also aware, based on my training and experience, that the quantity of pills is often referred to as a "roll" and is a regularly distributed quantity of these pills. I believe that the "roll" of "blues" recovered from the vehicle exhibit Gregory Brown, Jr.'s distribution practices in furtherance of the Norteño street gang and the RDL and LNG sets.

### Additional Use of Target Telephone 1

102.    Edgar Munguia Del Rayo has continued to use TT-1 to coordinate Norteño street gang activities in Southwest Washington following the arrests of Nicholas Martinell-Sterling & Austin Bell and their continued custody at Clark County Jail. Many calls have been made on recorded telephone lines from Clark County Jail and the Washington State Penitentiary. Specifically, calls made to Edgar Munguia Del Rayo on

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 36
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

TT-1 are utilized to relay messages between Nicholas Martinell-Sterling & Austin Bell within the Clark County Jail, as well as to Jeffery D. Lewis at the Washington State Penitentiary.

103.   Based on my training and experience, I am aware that incarcerated individuals will utilize third parties to relay messages from other known associates or co-conspirators. Specifically, Nicholas Martinell-Sterling instructed Edgar Munguia Del Rayo to direct Austin Bell to request to be moved within the jail to a unit adjacent to Nicholas Martinell-Sterling. I am also aware, based on my training and experience, that Norteño street gang members, as well as other violent street gang members, will attempt to get individuals belonging to their same gang or set to be housed in the same area in prison or jail facilities. The reason for doing so is to ensure safety of the group, in this case the Norteño street gang, from attack or targeting by rival street gangs.

104.   On April 8, 2023, Nicholas Martinell-Sterling made a series of phone calls to TT-1 on the recorded jail line. During one of the calls Nicholas Martinell-Sterling informed Edgar Munguia Del Rayo that "Risky got locked up." Based on my training and experience, I believe that Nicholas Martinell-Sterling was telling Edgar Munguia Del Rayo about the arrest of Gregory Brown, Jr. in Longview, Washington. In a later call on April 8, Nicholas Martinell-Sterling stated that "Risky got a UPF," consistent with Brown, Jr.'s arrest.

105.   On April 9, 2023, Nicholas Martinell-Sterling made a phone call to TT-1 on the recorded jail line. During the call both parties quickly discussed whether Gregory Brown, Jr. would be bailing out of Cowlitz County Jail. Both parties discuss a Norteño street gang member identified by the moniker 'Lil Savage.' I have consulted with other investigators, specifically the Longview Street Crimes Unit, to identify this individual as Kamrin Kerr, born in 2004, who is a Norteño street gang member for the RDL set. Edgar Munguia Del Rayo told Martinell-Sterling that he had spoken to Kamrin Kerr between

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 37
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  the time of Brown, Jr.'s arrest and the current phone call (which occurred within 36 hours

2  of Gregory Brown, Jr.'s arrest).

3      106.   On April 20, 2023, I again requested authorization for a search warrant and

4  PRTT order for TT-1. Magistrate Judge Fricke issued the warrant, and I served it on

5  Sprint on April 20, 2023.

6                    ***Continued Use of Target Telephone - 2***

7      107.   On the evening of March 18, 2023, while monitoring the GPS geolocation

8  data for **TT-2**, I observed the device traveling eastbound towards Yakima, Washington.

9  Additionally, I reviewed the pen register data, which showed multiple telephone calls to

10  509-907-0687. I queried this number through CashApp and have identified an account

11  with the display name of 'Sergio Lopez' and username of '$bigmoney4114.' I believe

12  that this number is attributed to Sergio Manuel O. Lopez, Jr., aka TrackMoney P. Based

13  on my training and experience, I believed **Eddie Smith**'s destination was Yakima, to

14  meet with Sergio Manuel O. Lopez, Jr.

15      108.   The GPS geolocation data for **TT-2** showed the device arrived in Yakima at

16  approximately 7:20pm. At 7:30pm, the pen register showed an outgoing call from **TT-2**

17  to Sergio Manuel O. Lopez, Jr. lasting approximately one minute. Based on my training

18  and experience, I believe this call was to notify Sergio Manuel O. Lopez, Jr. of **Eddie**

19  **Smith**'s arrival in Yakima. The GPS geolocation data showed **TT-2** remained in the

20  Yakima area for approximately two hours before heading west towards Vancouver,

21  Washington.

22      109.   Investigators monitored the GPS geolocation data for **TT-2** as it traveled

23  west towards Vancouver, to surveil **Eddie Smith** as he returned to Vancouver.

24  Investigators assumed that **Eddie Smith** would travel along Interstate 84 in Oregon,

25  rather than State Road 14 in Washington. The ping radius of **TT2's** GPS geolocation data

26  while the device was traveling between The Dalles, Oregon, and Hood River, Oregon,

27  spanned both sides of the Columbia River and investigators were unable to determine

1  which route **Eddie Smith** chose to take. Investigators thus were unable to surveil **Eddie**

2  **Smith**.

3       110.    I coordinated with investigators in Yakima, Washington to query local

4  license plate readers for vehicles associated with **Eddie Smith**. These vehicles include a

5  2002 Cadillac Deville bearing Washington license plate CCS1265 and a 2002 Cadillac

6  Escalade bearing Washington license plate BWU3007. **Eddie Smith** is listed as the

7  registered owner of these vehicles. This query identified multiple times on March 18,

8  2023, that the Cadillac Escalade was in the Yakima area, confirming that **Eddie Smith**,

9  **TT-2**, and the vehicle were in Yakima for approximately two hours.

10       111.    Based on my training and experience, I am aware that those involved in

11  drug trafficking will travel great distances to acquire quantities of narcotics or deliver

12  quantities of illicit proceeds in the form of United States Currency. I am also aware that

13  those involved in drug trafficking will avoid long or extended stays in an area to avoid

14  detection by law enforcement. This often results in drug traffickers traveling long

15  distances for a shorter stay. Often the travel time is much greater than the actual stay in a

16  specific area. I am also aware that the distance between Vancouver and Yakima is over

17  175 miles, requiring over three hours of travel time. A round trip between the locations

18  would easily be over six hours. Since **Eddie Smith** and **TT-2** only remained in Yakima

19  for approximately two hours I believe that the nature of this trip was transactional. I

20  further believe that **Eddie Smith** was possibly dropping off illicit proceeds to pay a drug

21  debt, picking up quantities of narcotics without payment, or conducting an exchange of

22  illicit proceeds for quantities of narcotics.

23       112.    On April 8, 2023, **TT-2** received a call from the jail inmate account

24  attributed to Nicholas Martinell-Sterling at the Clark County Jail in Vancouver,

25  Washington. I recognized the voice of the answering party to be **Eddie Smith**. I have

26  heard **Eddie Smith**'s voice previously during review of phone calls received from

27  financial records requests for accounts attributed to **Eddie Smith**. I conducted a

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 39
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  comparison between these two calls and concluded that **Eddie Smith** could be heard on

2  both calls. However, the individual who called **TT-2** was not Nicholas Martinell-Sterling.

3  The unidentified male caller stated, "I'm just in here hanging with my little homey

4  Swisher." I am aware that Nicholas Martinell-Sterling's street moniker is "Swisher," and

5  that the moniker would be recognized by other Norteño street gang members. The

6  unidentified male did not self-identify during the call.

7       113.   During the call, the unidentified male discussed his time in solitary

8  confinement, commonly referred to as 'the hole.' The unidentified male mentioned

9  "Boots" also having been in solitary confinement. **Eddie Smith** informed the unidentified

10  male that "Boots" was in solitary confinement at Shelton for getting in a fight with a

11  "skrap." Based on my training and experience, I am aware that "Boots" is the moniker for

12  Byron Chant, born in 1989. I am also aware that Byron Chant had recently been

13  sentenced to prison and had been transferred from Clark County Jail to the Washington

14  Corrections Center in Shelton, Washington, for routine intake procedures before going to

15  the Washington State Penitentiary in Walla Walla, Washington. I was notified by DOC

16  that Byron Chant had assaulted another inmate while in the infirmary. I am also aware,

17  based on my training and experience, that "skrap" is coded language for a Sureño street

18  gang member. Based on this information, I believe that **Eddie Smith** and the unidentified

19  male were in fact talking about Byron Chant assaulting a Sureño gang member. I am also

20  aware, based on my training and experience, that Norteño street gang members are

21  instructed to confront Sureño street gang members while in Washington State DOC

22  facilities, as well as in the outside world, when the opportunity presents itself. Both call

23  participants appeared to be proud of this activity, and it is my belief that this exemplifies

24  their personal pride in the goals and missions of the Norteño street gang. The unidentified

25  male caller eventually passed the jail phone to Nicholas Martinell-Sterling to talk to

26  **Eddie Smith**. During this portion of the call **Eddie Smith** stated that he would be

27  moving to the Leverich Park area in Vancouver.

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 40

USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

114.    In mid-April 2023, CHS-2 reported that **Eddie Smith** would be moving within Vancouver, Washington. CHS-2 did not have an updated address for **Eddie Smith** but was aware of the impending move. After receiving this reporting, I reviewed and monitored the geolocation data for **TT-2** observing that it appeared **Eddie Smith** had executed this change of residence. I queried Clark County public utility records for a new address registered to **Eddie Smith** with negative results. On April 19, 2023, I utilized the geolocation data from **TT-2** to locate **Eddie Smith**'s new residence.

115.    At approximately 7:30 am I observed the geolocation data for **TT-2** was around Leverich Park in Vancouver, Washington. I canvassed the area encompassed in the ping radius in an effort to locate the two Cadillacs attributed to **Eddie Smith** with negative results. I observed the geolocation data for **TT-2** show the device begin traveling through Vancouver. I traveled to **Eddie Smith**'s previous residence and observed the gold Cadillac Deville referenced above. The geolocation data for **TT-2** showed the device appeared to be traveling towards Portland, Oregon via Interstate-205. I am aware that **Eddie Smith** works at HBC Furniture Warehouse in Portland, Oregon, and at 8:32 am I observed the Cadillac Escalade parked near the entrance to the business. The geolocation data for **TT-2** was consistent with this observation.

116.    On April 26, 2023, I again attempted to utilize the geolocation data for **TT-2** to locate **Eddie Smith**'s new residence.  At 5:20am I observed the geolocation data around Leverich Park in Vancouver, Washington, like what I had observed on April 19, 2023. I canvassed the area to locate the Cadillac Escalade, as I believed **Eddie Smith** was likely using this as his primary vehicle. I observed the Cadillac Escalade parked facing north in an overflow parking spot north of 1300 NE 43rd Street in Vancouver, Washington. I have reviewed Clark County public utility records for the address on NE 43rd Street. There were no listings for **Eddie Smith** at the residence. I observed a resident named 'Charlie A. Vialau' with listed phone number (564) 208-8675 associated with the address as of April 21, 2023. I queried this number through the pen register data for **TT-**

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 41

USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 **2**. Between April 26th and April 28th there had been multiple exchanges between Vialau's

2 number and **TT-2**. Based on my training and experience, I am aware that individuals

3 involved in drug trafficking will often utilize names of unwitting individuals on public

4 utility records, phone subscriber records, and other modalities to avoid detection by law

5 enforcement. I believe that 'Charlie A. Vialau' is possibly an unwitting individual being

6 utilized by **Eddie Smith** to obfuscate his connection to the address to thwart detection by

7 law enforcement.

8     117.    Investigators have likewise found the collection of PRTT data for **TT-2**

9 beneficial. Investigators have utilized the data to identify **Eddie Smith**'s frequent

10 contacts, CashApp accounts attributed to these contacts, discovery of financial reporting

11 linked to the contacts, and other social media accounts linked to these contacts.

12     118.    Investigators have identified CashApp as a method used by Norteño gang

13 members to launder illicit drug proceeds and "pay taxes" to La Nuestra Familia.

14 Information received from Bureau of Prisons – National Gang Unit assisting in this

15 investigation is that Norteño gang sets are required to pay 25% of all illicit proceeds to La

16 Nuestra Familia. Street level Norteño gang members also use CashApp while distributing

17 narcotics to thwart law enforcement efforts; when observed during short contact with

18 individuals exchanging narcotics, often referred to as a 'hand-to-hand,' the Norteño drug

19 dealer does not receive any physical United States currency from the customer. If law

20 enforcement contacts the dealer, there will be no physical evidence (in the form of cash)

21 to indicate a transaction took place.

22     119.    Given the above facts, I believe there is probable cause to believe that

23 **Eddie Smith** is using **TT-2** for drug and gang-related purposes and will continue to use

24 **TT-2** for the same purposes. Based on my training and experience, I am aware that drug

25 trafficking is not a singular offense and will be conducted repeatedly to gather illicit

26 proceeds. Additionally, I believe **TT-2** will be utilized in furtherance of Norteño street

27 gang activity within the Western District of Washington and elsewhere. I further believe

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 42

USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  that the PRTT data from **TT-2** will contain information related to **Eddie Smith**'s drug

2  trafficking activities in Western Washington and elsewhere. Based on the criminal

3  investigation discussed herein, these records are likely to constitute relevant and material

4  information related to the ongoing racketeering conspiracy of the Norteño street gang and

5  the RDL and LNG sets, in violation of 18 U.S.C. § 1962.

6                    **INFORMATION ON CELLULAR DEVICES**

7          120.   The location information requested in this affidavit is useful in drug

8  trafficking investigations as the information can be used to: (1) aid surveillance during

9  suspected drug deals; (2) help locate and identify target residences, stash houses, and

10  other storage locations; (3) help identify where known and unknown conspirators live and

11  the vehicles they drive; (4) help identify sources of supply, customers, and other

12  unknown conspirators who assist in the distribution of narcotics and/or help launder the

13  cash drug proceeds; (5) help understand the geographic breadth of the organization and

14  how and where conspiracies operate; and (6) help identify transportation sources used by

15  the conspirators.

16          121.   Based on my training and experience, I know each cellular device has one

17  or more unique identifiers embedded inside it. Depending on the cellular network and the

18  device, the embedded unique identifiers for a cellular device could take several different

19  forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity

20  Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity

21  Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number

22  ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International

23  Mobile Equipment Identity ("IMEI"). The unique identifiers -- as transmitted from a

24  cellular device to a cellular antenna or tower -- can be recorded by pen-traps and indicate

25  the identity of the cellular device making the communication without revealing the

26  communication's content.

27

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 43
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

122.    Based on my training and experience, I know that when a cell phone connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower, and the cellular antenna or tower records those identifiers as a matter of course. The unique identifiers -- as transmitted from a cell phone to a cellular antenna or tower -- are like the telephone number of an incoming call. They can be recorded by pen-trap devices and indicate the identity of the cell phone device making the communication without revealing the communication's content. In addition, a list of incoming and outgoing telephone numbers is generated when a cell phone is used to make or receive calls, or to send or receive text messages (which may include photographs, videos, and other data). These telephone numbers can be recorded by pen-trap devices and then used to identify the parties to a communication without revealing the communication's contents.

123.    Based on my training and experience, I know that a cell phone can also be used to exchange text messages with email accounts. The email addresses associated with those text messages can be recorded by pen-trap devices and then used to identify parties to a communication without revealing the communication's contents.

124.    Based on my training and experience, I know that cellular phones can connect to the internet via a cellular network. When connecting through a cellular network, internet communications sent and received by the cellular phone each contain the same unique identifier that identifies cellular voice communications, such as an ESN, MEIN, MIN, SIM, IMSI, MSISDN, or IMEI. Internet communications from a cellular phone also contain the IP address associated with that cellular phone at the time of the communication. Each of these unique identifiers can be used to identify parties to a communication without revealing the communication's contents.

125.    In my training and experience, I have learned that Verizon is a company that provides cellular telephone access to the public. I also know that certain providers of cellular telephone service, including Verizon, have technical capabilities that allow them

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 44
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   to collect and generate information about the locations of the cellular telephones to which

2   they provide service, including E-911 Phase II data (also known as GPS data or latitude-

3   longitude data) and cell-site data (also known as "tower/face information" or cell

4   tower/sector records). E-911 Phase II data provides relatively precise location

5   information about the cellular telephone itself, either via GPS tracking technology built

6   into the phone or by triangulating on the device's signal using data from several of the

7   provider's cell towers.  Cell-site data identifies the cell towers (i.e., antenna towers

8   covering specific geographic areas) that received a radio signal from the cellular

9   telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the

10  telephone connected. These towers are often a half-mile or more apart, even in urban

11  areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to

12  a wireless device does not necessarily serve every call made to or from that device.

13  Accordingly, cell-site data is typically less precise than E-911 Phase II data.

14        126.   When using a cellular connection to receive or transmit data, a cellular

15  phone typically utilizes a cell tower to make telephone calls, send or receive text

16  messages, send or receive emails, surf the internet, carry out application-initiated data

17  transfers, among other things.

18        127.   Based on my training and experience, I know that Verizon can collect cell-

19  site data about the Target Telephone. Based on my training and experience, I know that

20  for each communication (including data connections) a cellular device makes, its wireless

21  service provider can typically determine: (1) the date and time of the communication; (2)

22  the telephone numbers involved, if any; (3) the cell tower to which the customer

23  connected at the beginning of the communication; (4) the cell tower to which the

24  customer connected at the end of the communication; and (5) the duration of the

25  communication. I also know that wireless providers such as Verizon typically collect and

26  retain cell-site data pertaining to cellular devices to which they provide service in their

27  normal course of business to use this information for various business-related purposes.

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 45
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

128.     Different service providers use different systems, applications, and reports to collect or analyze cell site data. These systems, applications, and reports are referred to by a variety of names including, but not limited to real-time tool or "RTT" (Verizon), Periodic Location Updates or "PLU" (Verizon), per call measurement data or "PCMD" (Sprint), Location Database of Record or "LOCDBOR" (AT&T), EVDO, ALULTE, Timing Advance and True Call (T-Mobile/Sprint/US Cellular/GCI). RTT data, for example, estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

129.     Based on my training and experience, I know that wireless providers such as Verizon typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as Verizon typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Telephone's user or users and may assist in the identification of co-conspirators and/or victims.

**AUTHORIZATION REQUEST**

130.     Based on the foregoing, I request that the Court issue the proposed search warrants and pen-trap order, pursuant to Federal Rule of Criminal Procedure 41, 18 U.S.C. § 2703(c), and 18 U.S.C. § 3123.

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 46
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

131.    I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice to the subscriber or user of the Target Telephone until 90 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Telephone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2)..

132.    I further request that the Court direct Verizon to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Verizon. I also request that the Court direct Verizon to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon's services, including by initiating a signal to determine the location of the Target Telephone on Verizon's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The agency shall reasonably compensate Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

133.    Pursuant to 18 U.S.C. § 2703(g), the government will execute this warrant by serving the warrant on Verizon. Because the warrant will be served on Verizon, who

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 47
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 will then compile the requested records and data, reasonable cause exists to permit the

2 execution of the requested warrant at any time in the day or night. I therefore request that

3 the Court authorize execution of the warrant at any time of day or night, owing to the

4 potential need to locate the Target Telephone outside of daytime hours.

5       134.   This is the third request in this judicial district for a warrant and a PRTT

6 order with respect to **TT-2** as a part of this investigation.

7       135.   As noted above, I am assigned to the FBI's Vancouver, Washington, office.

8 Thus, I am submitting this affidavit and application electronically in accordance with

9 Local Criminal Rule 41(d)(3).

10

11                                  SEAN THORNTON, Affiant

12                                  Special Agent

                                 FBI

13

14      The above-named agent provided a sworn statement to the truth of the foregoing

15 affidavit by telephone on the 2nd day of May 2023.

16

17

18                                  DAVID W. CHRISTEL

                                 United States Magistrate Judge

19

20

21

22

23

24

25

26

27

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 48
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**EXHIBIT 1**

<u>DECLARATION</u>

I, Marci L. Ellsworth, declare as follows:

1.      I am a duly appointed Assistant United States Attorney for the Western District of Washington, and I have primary responsibility for representing the interests of the United States herein.

2.      I make this declaration in support of an application for a search warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) with an integrated pen-trap order pursuant to 18 U.S.C. §§ 3122 and 3123.

3.      Pursuant to 18 U.S.C. § 3122(b), I certify that the FBI is the law enforcement agency conducting the investigation in this matter and that the information likely to be obtained from the requested warrant is relevant to an ongoing criminal investigation being conducted by that agency.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing Application is made on the basis of information officially furnished, and on that basis I verily believe such information to be true.

Executed this 2nd day of May 2023.


*s/ Marci L. Ellsworth*
MARCI L. ELLSWORTH
Assistant United States Attorney

Exhibit 1 - Declaration -- PAGE 1

USAO # 2022R01041

**ATTACHMENT A**

**Property to Be Searched and Subscriber/Subject Information**

1.      Records and information associated with the cellular phone assigned call number 206-856-3244, without listed subscriber (the "Target Telephone"), that are in the custody or control of Verizon, a company headquartered at 180 Washington Valley Road, Bedminster, NJ 07921. The subscriber of the Target Telephone is not listed. The identity of the person who is the subject of the criminal investigation and believed to be using the Target Telephone is **Eddie Smith**.

2.      The Target Telephone.

Attachment A -- PAGE 1

USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**ATTACHMENT B**

**Particular Things to be Seized**

This warrant is issued pursuant to Rule 41 of the Federal Rules of Criminal Procedure, the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, and the Pen Register Act, 18 U.S.C. §§ 3121-3127. As such, this warrant authorizes the collection of subscriber records, pen-trap data, cell site data, and prospective E-911/GPS and cell site triangulation information regarding the Target Telephones. **This warrant does not authorize the disclosure or seizure of any tangible property or the content of any wire or electronic communication, as defined in 18 U.S.C. § 2510(8).** Accordingly, the Court finds reasonable necessity for the seizure of the data and records identified below. *See* 18 U.S.C. § 3103a(b)(2).

I.     <u>Section I</u>:  Information to be Disclosed by Verizon

1.     **Subscriber/Account Information.** The following non-content information about the customers or subscribers associated with the Accounts listed in Attachment A:

a.     Names (including subscriber names, user names, and screen names);

b.     Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

c.     Local and long distance telephone connection records for the past 60 days;

d.     Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions for the past 60 days;

e.     Length of service (including start date) and types of service utilized;

f.     Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"),

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital

Network Numbers ("MSISDN"), International Mobile Subscriber Identity Identifiers

("IMSI"), or International Mobile Equipment Identities ("IMEI");

       g.    Other subscriber numbers or identities (including the registration

Internet Protocol ("IP") address); and

       h.    Means and source of payment for such service (including any credit

card or bank account number) and billing records.

    2.    **Pen Register/ Trap and Trace Data and Associated Subscriber Records**

**to Be Provided for a Period of 45 Days.**

       a.    Verizon shall install and monitor pen-trap devices to record, decode,

and/or capture dialing, routing, addressing, and signaling information associated with

each communication to or from the Target Telephone including the date, time, and

duration of the communication, and the following, without geographic limit and without

notice to the subscriber:

         (i)    IP addresses associated with the cell phone device or devices

                used to send or receive electronic communications;

         (ii)    Any unique identifiers associated with the cell phone device or

                devices used to make and receive calls with the cell phone

                number described in Attachment A, or to send or receive other

                electronic communications, including the ESN, MEIN, IMSI,

                IMEI, SIM, MSISDN, or MIN;

         (iii)    IP addresses of any websites or other servers to which the cell

                phone device or devices connected; and

         (iv)    Source and destination telephone numbers and email

                addresses.

Attachment B -- PAGE 2

USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1          b.     On a 24-hour-a-day basis, for the duration of the authorized pen-trap

2  devices, Verizon shall provide the following records for those subscribers whose

3  identifiers are obtained pursuant to the use of the pen-trap devices:  published or non-

4  published subscriber names and addresses, including billing addresses.

5          3.     **Historical Cell Site Location Information.**

6          a.     All records and other information (**<u>not including the contents of</u>**

7  **<u>communications</u>**) relating to wire and electronic communications sent or received by the

8  Accounts from February 9, 2023, to the date of this warrant, including:

9              i.     the date and time of the communication, the method of the

10  communication, and the source and destination of the communication (such as the source

11  and destination telephone numbers (call detail records), email addresses, and IP

12  addresses); and

13              ii.     historical cell site information regarding the cell tower and

14  antenna face (also known as "sectors") through which the communications were sent and

15  received.  This information is to be provided irrespective of the application, name, or

16  report utilized by Verizon. Accordingly, this information includes the following data sets

17  to the extent that they are collected by Verizon: RTT, PLU, PCMD, LOCDBOR, EVDO,

18  True Call, ALULTE, and Timing Advance.

19          b.     The physical address and coverage maps of cell towers used by the

20  Target Telephones.

21          4.     **Prospective Cell Site Location Information.**

22          a.     All information about the location of the Target Telephone described

23  in Attachment A for **<u>a period of 45 days</u>**, during all times of day and night. This

24  information includes: precise location information, as well as all data about which "cell

25  towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces

26  of the towers) received a radio signal from the cellular telephone(s) or account(s)

27

UNITED STATES ATTORNEY
1201 Pacific Ave., Suite 700
Tacoma, Washington 98402
(253) 428-3800

1  described in Attachment A. This information also includes the following data sets to the

2  extent that they are collected by Verizon: RTT, PLU, PCMD, LOCDBOR, EVDO, True

3  Call, ALULTE, and Timing Advance.

4        b.    The physical address and coverage maps of cell towers used by the

5  Target Telephone.

6       5.    **Prospective E-911/GPS and Cell Site Triangulation Information.**

7        a.    All information about the location of the Target Telephone described

8  in Attachment A for **a period of 45 days**, during all times of day and night. This

9  information includes: all available E-911 Phase II data, GPS data, latitude-longitude data,

10  and other precise location information, as well as all data about which "cell towers" (i.e.,

11  antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the

12  towers) received a radio signal from the cellular telephone(s) or account(s) described in

13  Attachment A.

14        b.    The physical address and coverage maps of cell towers used by the

15  Target Telephone.

16      To the extent that the location information described in the previous paragraphs

17  (hereinafter, "Location Information") is within the possession, custody, or control of

18  Verizon, Verizon is required to disclose the Location Information to the government

19  pursuant to this warrant. In addition, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-

20  (b), Verizon must furnish the government all information, facilities, and technical

21  assistance necessary to accomplish the collection of the Location Information

22  unobtrusively and with a minimum of interference with Verizon's services. The

23  government shall compensate Verizon for reasonable expenses incurred in furnishing

24  such facilities or assistance.

25

26

27

Attachment B -- PAGE 4

USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**II.     Section II:  Information to Be Seized by the Government**

1.      All information described above in Section I that constitutes evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. § 1962 involving **Edgar Munguia Del Rayo (aka Fatboy), Nicholas Martinell-Sterling (aka Swisher), Jared Dewayne Taylor (aka Privilege), Eddie Smith, Austin Bell** and others.

2.      All non-content subscriber/account information provided pursuant to 18 U.S.C. § 2703(c).

3.      All non-content dialing, routing, addressing, and signaling information provided pursuant to 18 U.S.C. §§ 3121-3127.

4.      Location Information regarding the Target Telephone.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by Verizon to locate the things particularly described in this warrant.

Attachment B -- PAGE 5

USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800